UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MONTY STILLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:17-cv-00394-JMS-DLP |
| | ) |
| CITY OF TERRE HAUTE, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This case arises out of an employment dispute between plaintiff Monty Stillman and the City of Terre Haute, Indiana ("the City"). Mr. Stillman contends that he was subjected to a hostile work environment and that his employment was ultimately terminated in retaliation for having spoken up for, and participated in the lawsuit of, a coworker who suffers from a cognitive disability. He raises claims for negligent supervision, slander, and discriminatory retaliation. Presently pending before the Court is the City's Motion for Summary Judgment as to all of Mr. Stillman's claims. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** that Motion.

**I.**
**LEGAL STANDARD**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the

1

materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative. *Montgomery v. American Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and

the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The following factual background is set forth pursuant to the standard discussed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). In large part, the factual evidence here is undisputed for purposes of summary judgment. Rather, the parties dispute the import of those facts in light of the applicable law.

Mr. Stillman was hired by the City in 2006 or 2007 to work in the Street Department, where he eventually became a heavy equipment operator. [Filing No. 32-1 at 3.] During the same timeframe, Terry Fish was employed as a maintenance worker in the Street Department's garage. [Filing No. 32-2 at 3.] Mr. Fish had some degree of cognitive impairment, of which his supervisor was aware. [Filing No. 32-2 at 3.] At some point in 2013 or 2014, Mr. Stillman perceived that some Street Department employees were harassing Mr. Fish because of his cognitive impairment.[1] [Filing No. 32-1 at 11.] For example, Mr. Stillman heard employee Russell Pruden, while speaking about Mr. Fish, say "that retarded bastard should get out of here" or "needs to go" because "[Mr.

---

[1] The timeline and order of the following events is not entirely clear from the record evidence presented, but they generally unfolded between 2014 and 2016.

Pruden's] son needs a job." [Filing No. 32-1 at 11.] Mr. Stillman reported that statement to Brad Miller, the City's Transportation Director. [Filing No. 32-1 at 11.] Mr. Stillman also witnessed several employees "messing with" Mr. Fish, and he yelled at everyone present, including Mr. Pruden and Ray Hollingsworth, who was Mr. Stillman's foreman, to "leave Terry alone." [Filing No. 32-1 at 18.] At some point, although the timing is unclear, Mr. Stillman also met with the City Attorney to discuss the harassment that Mr. Fish was experiencing. [Filing No. 32-1 at 16.]

Throughout the time period relevant to this lawsuit, the City had an anti-harassment policy, and at some point in 2015, the City introduced a "zero tolerance policy" regarding workplace harassment. [Filing No. 32-3 at 5; Filing No. 32-2 at 5.] After Mr. Stillman told Mr. Pruden to "back off" Mr. Fish, Mr. Pruden began calling Mr. Stillman by a variety of insulting names, including "c*ck s*cker," "b*tch," "cracker," and "queer." [Filing No. 32-1 at 11.] Mr. Stillman reported the name-calling to Mr. Miller at least four times, who advised Mr. Stillman to ignore it. [Filing No. 32-1 at 11-12.] At some point in 2014, Jeff Crabill, another Street Department employee, told Mr. Stillman that Mr. Stillman "sucks d*cks" and that Mr. Stillman should go "suck [Mr. Miller's] d*ck." [Filing No. 32-1 at 9.] On February 12, 2015, Mr. Crabill shoved Mr. Stillman while on the job, causing Mr. Stillman to suffer physical injuries and miss work for several days. [Filing No. 32-1 at 9-10.] Mr. Crabill was criminally prosecuted and convicted for the battery. [Filing No. 32-1 at 9-11; Filing No. 32-3 at 6.] It is not clear which harassment policy was in effect at the time of the battery, but in any event, Mr. Crabill's employment was not terminated. [Filing No. 32-1 at 9-11; Filing No. 32-3 at 6.]

After Mr. Stillman returned to work, Mr. Pruden and Mr. Hollingsworth engaged in further name-calling. Mr. Hollingsworth called Mr. Stillman a "cry baby" and played sounds of a baby crying on his cell phone with a speaker. [Filing No. 32-1 at 12; Filing No. 32-1 at 15.] Also using

4

cell phones and a speaker, Mr. Hollingsworth and Mr. Pruden played the song "The B*tch is Back," such that Mr. Stillman and other supervisors could hear it. [Filing No. 32-1 at 14-15.] Mr. Stillman reported these incidents to Mr. Miller, who told him to ignore them, or to "be a bigger person." [Filing No. 32-1 at 15.]

Mr. Stillman also reported the remarks made by Mr. Pruden and Mr. Hollingsworth to Human Resources Director Jama DeBow. [Filing No. 32-1 at 13.] After receiving complaints from multiple individuals at the Street Department concerning alleged harassment, including complaints that Mr. Stillman harassed other employees, Ms. DeBow met with Street Department employees in February 2015 to investigate what problems existed. [Filing No. 32-3 at 6.] After conducing that investigation, she believed that Mr. Stillman "was the common denominator" among employee complaints, and she recommended to the City Attorney that Mr. Stillman's employment be terminated. [Filing No. 32-3 at 10.]

For reasons not reflected in the record, Mr. Stillman's employment was not terminated. In late 2015, he took medical leave due to a knee injury and surgery. [Filing No. 32-1 at 28.] In November 2015, Mr. Fish filed a charge of discrimination with the Equal Employment Opportunity Commission alleging disability-based discrimination. [*See* Docket No. 1 in *Fish v. City of Terre Haute*, Case No. 2:17-cv-354-JMS-MJD.] Mr. Fish filed a notice of tort claim against the City, and Mr. Stillman was named as a witness in that action. [Filing No. 32-1 at 22.] That notice was at some point published on the website of a local television station. [Filing No. 32-1 at 22.] Mr. Stillman returned from medical leave in late-March 2016, and shortly thereafter delivered a letter to the office of the mayor or to human resources (or both) complaining of a hostile work environment. [Filing No. 48-5; Filing No. 32-1 at 16.] In that letter, he also alleged that one of

5

the individuals involved generally in "harassing employees" was specifically harassing Mr. Fish. [Filing No. 32-3 at 15.]

In April 2016, the situation at the Street Department seemed to have reached a breaking point. In a letter with signatures dated April 12, 2016, twenty-seven Street Department employees requested that the City provide a "safe, non[-]hostile work environment regarding the harassment and false accusations by Terre Haute Street Department employee Monty Stillman." [Filing No. 48-1 at 1.] The letter requested that the City terminate Mr. Stillman's employment or transfer him, and it states that the undersigned employees were "tired of being relentlessly harassed by Monty Stillman over the past 10 years." [Filing No. 48-1 at 1.] Among the signatories were Mr. Pruden, Mr. Hollingsworth, and Mr. Crabill. [Filing No. 48-1.] That letter was ultimately submitted to the City's legal department, but it is unclear when.[2] [*See* Filing No. 32-2 at 8.]

After the legal department received the letter, someone from that office instructed Mr. Miller to suspend Mr. Stillman until a final decision regarding Mr. Stillman's employment could be made. [Filing No. 32-2 at 8.] On April 25, 2016, the City's legal department received a written statement from Mr. Stillman asserting that on April 4, 2016, Mr. Hollingsworth announced over the Street Department's radio that Mr. Stillman had just been served with divorce papers. [Filing No. 48-6.] The letter also stated that Mr. Hollingsworth put the divorce papers in the tool room "for everyone to see and read," and that Mr. Stillman reported the incident to Mr. Miller. [Filing No. 48-6.] That same day, the legal department received a separate statement from Mr. Stillman stating that Mr. Hollingsworth had made vulgar sexual remarks about Mr. Stillman's girlfriend and commented negatively about her physical appearance, which Mr. Stillman also reported to Mr.

---

[2] The letter submitted for the record contains a "CITY LEGAL" notation, but it does not contain a date stamp.

Miller.  [Filing No. 48-7; Filing No. 32-1 at 12-13.]  According to Mr. Stillman, Mr. Miller advised him that Mr. Hollingsworth had a First Amendment right to say what he did and instructed Mr. Stillman to ignore the comments.  [Filing No. 47-7 at 1; Filing No. 32-1 at 13.]

Approximately two weeks after Mr. Stillman was placed on leave, someone from the legal department called Mr. Miller "and said they had decided that [Mr. Stillman] should be terminated." [Filing No. 32-2 at 8.]  They instructed Mr. Miller to contact Mr. Stillman to "let him know," which Mr. Miller did.  [Filing No. 32-2 at 8.]  Mr. Miller believes that he signed a report regarding the termination that was prepared by the legal department.  [Filing No. 32-2 at 8.]  Mr. Miller does not recall what specific instances of conduct the legal department investigated, and he does not recall the specific reason for Mr. Stillman's termination.  [Filing No. 32-2 at 8.]  That report, if one exists, was not submitted as part of the record on summary judgment.

An unsigned "Corrective Action Form" in the record indicates that Mr. Stillman was terminated for the following reasons: "Fall 2015: Harassment/Intimidation of a fellow Street Department Employee" and "Spring 2016: False Allegations Against Co-Workers with Intent to Defraud."  [Filing No. 48-10.]  The form states that "[a]n internal investigation has found that you are in violation of the City of Terre Haute Principles of Employment, Anti-Harassment Policy, and the Zero Tolerance Policy.  The violations listed above have been identified, which have resulted in your termination."  [Filing No. 48-10 at 1.]  Mr. Stillman's employment was ultimately terminated on May 2, 2016.  [Filing No. 32-1 at 3.]

Mr. Stillman filed a Complaint in this matter on August 15, 2017, alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), and state-law claims for slander and negligent supervision.  [Filing No. 1.]  The City now moves for summary judgment on all claims, and that Motion is fully briefed and ripe for the Court's review.  [Filing No. 32.]

7

# III.
# DISCUSSION

The City moves for summary judgment as to all of Mr. Stillman's claims. In his response to the City's Motion, Mr. Stillman stipulates to the dismissal of his state-law slander claim. [Filing No. 47 at 13.] The Court, therefore, **GRANTS** the City's Motion for Summary Judgment as to Mr. Stillman's claim for slander. Remaining for resolution are the claims for retaliation under the ADA and state-law negligent supervision, which the Court addresses in turn.

### A. Retaliation Claim

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). It further provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

The City raises two arguments as to Mr. Stillman's retaliation claim: (1) that Mr. Stillman has failed to provide evidence of a causal link between any retaliation and his protected activity; and (2) that Mr. Stillman may not raise a claim for compensatory or punitive damages, and therefore that no relief can be granted, even if a violation occurred. The Court addresses each in turn.

#### *1. Causal Link*

The Court begins by addressing a threshold issue. In its Motion for Summary Judgment, it appears that the City construes Mr. Stillman's Complaint as alleging only a retaliatory

8

termination. [*See* Filing No. 33 at 11.] But as Mr. Stillman points out, and this Court agrees, he complains not only of his termination, but also that he experienced persistent and pervasive harassment in the workplace in the period preceding his termination. [*See* Filing No. 47 at 15.] To be sure, Mr. Stillman's Complaint is imprecise regarding the nature of his retaliation claim and any specific theories of liability. For example, the Complaint pleads a claim for "retaliatory discrimination" in violation of federal law, but it does not specify what statute is applicable. [Filing No. 1 at 7-8.] But that degree of specificity is not required in a complaint, and in his Statement of Claims, Mr. Stillman elaborates that the City, by way of "its employees…retaliated and/or failed to prevent and promptly correct harassing behavior directed toward Plaintiff[,] thereby cultivating a workplace where harassing conduct was tolerated and excused." [Filing No. 28 at 2]; *see, e.g., Hatmaker v. Memorial Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010) (stressing that plaintiffs need not plead legal theories, but only plausible claims). In his statement of claims, Mr. Stillman also contends that the City "tolerated a hostile work environment and failed to properly train and/or supervise Terre Haute Street Department supervisors and employees." [Filing No. 28 at 3.] This is sufficient to put the City on notice that the retaliation at issue included an element of a retaliatorily hostile work environment.[3]

The City moves for summary judgment only on the basis that Mr. Stillman has failed to provide any admissible evidence of a causal link between his termination and his support of Mr. Fish's EEOC complaint and the ensuing investigation. [Filing No. 33 at 11-12.] The City argues that Mr. Stillman's proffered evidence only references a temporal connection between those two

---

[3] Since the City, it seems, did not read Mr. Stillman's Complaint as raising a hostile work environment theory of retaliation, it focuses only on Mr. Stillman's termination as the relevant adverse employment action or injury. The Court discusses Mr. Stillman's allegations regarding a hostile work environment to the extent that they are relevant to the motive(s) of his alleged harassers.

events. [Filing No. 33 at 12-13.] It argues that the temporal gap is too long to be suspicious, and that in any event, temporal proximity alone is insufficient to support a finding of causation. [Filing No. 33 at 12-13.] In response, Mr. Stillman argues that the temporal gap is indeed suspicious, and that more than temporal proximity supports an inference of a causal connection. [Filing No. 47 at 16.] He points to the specific content of the harassing conduct that he suffered as well as the identity of Mr. Pruden as both his and Mr. Fish's harasser. [Filing No. 47 at 16.]

In order to survive summary judgment on a retaliation claim, a plaintiff "must demonstrate that [he] engaged in protected activity, that [he] suffered an adverse action, and that there is a causal connection between the two." *Rowlands v. United Parcel Serv.- Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018). In order to establish a hostile work environment claim, he must provide "sufficient evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class *or in retaliation for protected behavior*; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss v. Castro*, 816 F.3d 910, 919-20 (7th Cir. 2016) (emphasis added).[4] Under either theory, the retaliation must be "a but-for cause of the adverse employment action." *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 963 (7th Cir. 2010).

---

[4] The Seventh Circuit has not explicitly determined whether hostile work environment claims are cognizable under the ADA. *See, e.g., Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009) (declining to decide whether hostile work environment claim is actionable under the ADA). But both the Seventh Circuit and district courts within it have assumed that the ADA could support such a claim, and as is common in discrimination claims, they have applied the framework developed in the Title VII context to analyze such claims. *See, e.g., Loyd*, 552 F.3d at 603; *Shott v. Rush Univ. Med. Ctr.*, 652 F. App'x 455, 458 (7th Cir. 2016); *Stelter v. Wisconsin Physicians Serv. Ins. Corp.*, 2018 WL 6271600, at *12 (W.D. Wis. 2018) ("The court of appeals has not yet determined whether hostile work environment claims are cognizable under the ADA. Courts in this circuit have entertained them anyway, so the court will do the same.") (internal citations omitted); *Drake v. Shulkin*, 2018 WL 573095, at *8 (S.D. Ind. 2018) (assuming ADA hostile work environment claim was actionable). This Court follows suit.

At issue here is the causation element, which requires Mr. Stillman to "demonstrate a triable issue as to whether discrimination motivated the adverse employment action" or hostile work environment. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). The Seventh Circuit's landmark decision in *Ortiz v. Werner Enterprises, Inc.* clarified how courts should conduct the causation analysis on summary judgment:

> Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect."

834 F.3d 760, 765 (7th Cir. 2016). Here, Mr. Stillman points to what is essentially a pile of circumstantial evidence that, in his view, would permit a jury to reach the conclusion that his protected activities were but-for causes of retaliation. As *Ortiz* instructs, the Court reviews that evidence under the appropriate holistic approach, making all reasonable inferences in favor of Mr. Stillman, as the non-movant.

The Court concludes that the evidence presented here is sufficient to establish a genuine dispute of material fact as to whether Mr. Stillman's protected activities were a but-for cause of either a retaliatorily hostile work environment or his termination.[5] Mr. Stillman has presented evidence—which the Court is required to credit at this stage—that he witnessed, addressed, and reported disability-based harassment of Mr. Fish. The City does not dispute that on multiple occasions, Mr. Stillman brought that harassment to the attention of the City, including to Mr. Miller, the City's Transportation Director, [Filing No. 32-1 at 11], Ms. DeBow, the Director of

---

[5] The City does not argue that Mr. Stillman did not engage in any protected activities, so for purposes of resolving this Motion, the Court assumes that he did.

Human Resources, the City Attorney, and the Mayor, [Filing No. 32-1 at 16]. Mr. Stillman has also pointed to undisputed evidence that Mr. Pruden—the same individual who harassed Mr. Fish—began verbally harassing Mr. Stillman immediately after Mr. Stillman told him to "back off Terry." [Filing No. 32-1 at 11.] That temporal proximity could support an inference of causation. And based on the content of the harassing statements, a reasonable jury could conclude that coworkers called Mr. Stillman a "cry baby," and referred to him as engaging in oral sex with Mr. Miller, based on animosity arising from his reporting Mr. Fish's harassment to Mr. Miller. Moreover, the parties did not dispute that Mr. Stillman repeatedly reported the harassment to his supervisor, who instructed him to ignore it.

Of course, at trial, a factfinder could instead conclude that the harassment was unrelated to any of Mr. Stillman's protected activities, and as the Seventh Circuit has repeatedly noted, not all forms of harassment that could be considered "hostile" are actionable. *See, e.g., Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018) ("…employers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace."). Ms. DeBow, for example, made notes of interviews with Street Department employees in February 2015, which reflect allegations made at that time against Mr. Stillman of inappropriate or bullying behavior. [Filing No. 32-3 at 13-60.] The statements contained in those notes are hearsay to the extent that they are introduced to prove the truth of the matters they assert. But should those individuals choose to testify at trial, admissible evidence could show that any animosity toward Mr. Stillman existed for entirely different, and non-prohibited, reasons. But at this stage, applying the summary judgment standard and making all reasonable inferences in favor of Mr. Stillman, the Court must conclude that there is a genuine issue of material fact as to causation.

The same is true regarding Mr. Stillman's termination. The City contends that Mr. Stillman points only to evidence of temporal proximity between his EEOC participation and his termination, and that such evidence is insufficient standing on its own to raise an inference of causation. But, as described above, Mr. Stillman points to other circumstantial evidence of retaliatory motive, and a jury could credit that evidence. The City also argues that several months separated the EEOC complaint and Mr. Stillman's termination, and that such a temporal gap is not suspicious. Mr. Stillman, however, was on medical leave for nearly all of that intervening time, was apparently on leave when the EEOC charge was filed, and was fired within two weeks of returning to work. From this evidence, a finder of fact could conclude that Mr. Stillman's participation in Mr. Fish's EEOC complaint was a but-for cause of his termination.

Finally, the City appears to argue briefly in its reply that it had a legitimate, non-discriminatory reason to fire Mr. Stillman: the petition circulated by his coworkers. [Filing No. 54 at 4.] The City argues that "[t]here is no evidence in the record that Brad Miller or any other supervisor with authority to terminate [Mr.] Stillman's employment was aware of any purported retaliatory motive on the part of any employee, or that any such person had participated in the preparation or circulation of the petition for his termination." [Filing No. 54 at 4.] This, however, misstates the record evidence. First, Mr. Pruden signed the petition (and by at least one account was the person responsible for drafting it). [*See* Filing No. 32-4 at 2 (deposition testimony of employee Michael Johnson stating that he believes Mr. Pruden drafted the petition and was the first person to sign it).] Mr. Stillman reported Mr. Pruden's harassment of Mr. Fish to multiple people, including those who received the petition. And the parties here do not dispute that Mr. Stillman on at least one occasion "yelled at" Mr. Pruden to stop harassing Mr. Fish.

Second, by the City's own evidence, the City's legal department instructed Mr. Miller to fire Mr. Stillman. The parties do not dispute that Mr. Fish served the City with a notice of tort claim around the same time as the EEOC filing, and a reasonable jury could infer that City legal was aware of those filings at the time they were made. Moreover, the City provides very little evidence regarding the decision to terminate Mr. Stillman's employment. Ms. DeBow testified that the Human Resources department was typically not involved in hiring or firing decisions, and that such choices were generally left to the department head of the employee. [Filing No. 32-3 at 6.] And while Mr. Miller was the head of Mr. Stillman's department, Mr. Miller testified that he was instructed by someone (unspecified) in the City's legal department to fire Mr. Stillman, and he carried out that directive. [Filing No. 32-2 at 8.] Mr. Miller did not recall what specific instances of conduct the legal department investigated regarding Mr. Stillman, and he did not recall what the specific reason for Mr. Stillman's termination was. [Filing No. 32-2 at 8.] Mr. Miller testified that he believed that a report regarding the termination was prepared by the legal department, [Filing No. 32-2 at 8], but the City does not cite to that report, and the Court did not locate it within the record evidence.

The only documentary evidence in the record regarding Mr. Stillman's termination is an unsigned "Corrective Action Form," indicating that Mr. Stillman was being terminated for the following reasons: "Fall 2015: Harassment/Intimidation of a fellow Street Department Employee" and "Spring 2016: False Allegations Against Co-Workers with Intent to Defraud." [Filing No. 48-10.] Of course, these descriptions are non-specific and provide little in the way of explanation. The "Fall 2015" incident could have occurred, for example, eight months before Mr. Stillman's termination. The undisclosed coworkers could have been those about whom Mr. Stillman levied

charges of harassment. Quite simply, the evidence presented by the City does not specify who made the decision to terminate Mr. Stillman's employment or why.

Moreover, even regarding the limited explanation provided, a reasonable factfinder could conclude, based on the evidence presented, that those explanations were pretextual. In the most obvious example, Mr. Crabill was convicted of battering Mr. Stillman while on the job, and despite the anti-harassment policy (perhaps a "zero-tolerance" one) and his conviction, Mr. Crabill's employment was not terminated. In fact, there is no evidence in the record that he was subjected to any discipline at all. A reasonable factfinder could conclude that this constituted disparate treatment, and that the "Fall 2015: Harassment/Intimidation of a fellow Street Department Employee" listed on the corrective action form was pretextual.

Again, the Court does not opine on the credibility or weight of any of the evidence discussed, as it may not do so at the summary judgment stage. There is ample evidence in the record suggesting that interpersonal problems plagued the Street Department, and that Mr. Stillman was a difficult and perhaps disliked employee and coworker. A factfinder could conclude that any harassment that Mr. Stillman suffered was unrelated to any protected activities. But the evidence establishes a genuine dispute of material fact regarding causation—the only substantive basis upon which the City moves for summary judgment. A reasonable inference from the undisputed evidence presented is that Mr. Stillman's coworkers viewed him as a "snitch" for attempting to protect Mr. Fish, and for reporting instances of harassment. Therefore summary judgment is not appropriate.

### 2. Nature of Available Relief

The City argues that the Seventh Circuit has concluded that compensatory and punitive damages are not available remedies for ADA retaliation claims. [Filing No. 33 at 13-14] (citing

*Kramer v. Banc of America Securities, LLC,* 355 F.3d 961 (7th Cir. 2004)).] The City contends that because Mr. Stillman requests only the legal remedies of compensatory, exemplary, and punitive damages—remedies that are unavailable to him—it is entitled to summary judgment. [Filing No. 33 at 13-14.] In response, Mr. Stillman acknowledges that *Kramer* bars the compensatory and punitive damages he seeks. [Filing No. 47 at 17.] He argues instead that the United States Supreme Court has not yet addressed whether legal remedies are appropriate, that the logic and rationale behind *Kramer* do not "make sense," and that this Court should "decline to follow" it. [Filing No. 47 at 17.]

In *Kramer*, the Seventh Circuit first addressed whether the ADA permits an award of compensatory and punitive damages for claims based on retaliation. *Kramer*, 355 F.3d at 964-66 (citing 42 U.S.C. § 12117; 42 U.S.C. §§ 2000e-4 through e-9; 42 U.S.C. 1981(a)(2)). After discussing a split among district courts as to that question, the court concluded that "a meticulous tracing of the language of this tangle of interrelated statutes" revealed that the statutes provide "no basis for [a] claim of compensatory and punitive damages." *Id.* at 965. Following *Kramer*, courts in this Circuit have routinely applied the rule that compensatory and punitive damages are not available remedies in ADA retaliation cases. *See, e.g., Miller v. Illinois Dep't of Transp.*, 2012 WL 2922690, at *1 (S.D. Ill. 2012) ("…in the Seventh Circuit, compensatory and punitive damages are not recoverable on an ADA retaliation claim."); *Hensler v. City of O'Fallon, Ill.*, 2012 WL 293401, at *2 (S.D. Ill. 2012) (same).

In advocating for this Court to disregard Circuit precedent, Mr. Stillman points to one other district court, in a different circuit, that has explicitly disagreed with *Kramer* and concluded that the ADA does permit compensatory and punitive damages in retaliation cases. [Filing No. 47 at 17 (citing *Baker v. Windsor Republic Doors*, 635 F. Supp. 2d 765 (W.D. Ten. 2009)).] But the

16

existence of a contrary holding by a district court in another circuit does not relieve this Court of its obligation to apply precedent as it has been established by the Seventh Circuit. Compensatory and punitive damages are therefore not available to Mr. Stillman.

The City contends that because Mr. Stillman only requested forms of relief that are unavailable under the ADA, his claim must fail. *Kramer*, however, does not foreclose all relief to plaintiffs in ADA retaliation claims. Plaintiffs may properly seek equitable remedies, including back pay and front pay. *Kramer*, 355 F.3d at 966 ("Section 2000e-5(g)(1) provides that a court may order certain equitable relief including, but not limited to, back pay…"); *see also, e.g., Sanchez v. City of Chicago*, 2007 WL 2358632, *2 (N.D. Ill. 2007) (seeking back pay in ADA retaliation claim). It is true that neither Mr. Stillman's Complaint nor his Statement of Claims contain any indication that he seeks equitable relief. [Filing No. 1; Filing No. 28.] Part IX of his Complaint, entitled "Relief Requested," includes one sub-part, entitled "Legal Relief." [Filing No. 1 at 8.] In it, he asks for compensatory, exemplary, and punitive damages, as well as an award of interest, costs, and reasonable attorney's fees. [Filing No. 1 at 8-9.] There is no sub-part B, and he requests no other relief.[6] But the award of equitable relief is within the discretion of this Court, and Federal Rule of Civil Procedure 54(c) "entitles a prevailing plaintiff to the relief proper to his claim even if he did not request that relief." *Medici v. City of Chicago*, 856 F.3d 530, 532-33 (7th Cir. 2017) (citing Fed. R. Civ. P. 54(c)). It appears that the damages sought by Mr. Stillman could

---

[6] The Court also notes that the relief section of Mr. Stillman's Complaint incorrectly identifies the plaintiff in this case as "Stephen Steadman" instead of Monty Stillman, and requests relief against "Defendants," where here, the only defendant is the City of Terre Haute. [Filing No. 1 at 8.] Counsel should be mindful of his professional obligation to ensure the accuracy of documents filed on behalf of his client in this Court. *See* Fed. R. Civ. P. 11; Local Rule 83-5(e).

include either back or front pay, so to the extent that he seeks equitable relief that this Court may provide, his claim is permitted to proceed.[7]

For the reasons described above, the City's Motion for Summary Judgment as to Mr. Stillman's ADA retaliation claim is **DENIED**.

### B. Negligent Supervision Claim

Mr. Stillman also raises a claim for negligent supervision, contending that the City tolerated a hostile work environment and "failed to properly train and/or supervise Terre Haute Street Department supervisors." [Filing No. 1 at 6.] The City moves for summary judgment on this claim, arguing that it is entitled to "discretionary function immunity" under the Indiana Tort Claims Act ("ITCA"). [Filing No. 33 at 8.] The City contends that there is no evidence that the City violated a clearly established constitutional or statutory right in its supervision or retention of employees of the Street Department. [Filing No. 33 at 8-9.] In response, Mr. Stillman argues that he had a statutory right to be free from retaliation under the ADA and a statutory right to be free from battery. [Filing No. 47 at 12.] Mr. Stillman argues that discretionary function immunity does not apply here because the City has not established that the City's acts or omissions leading to the unlawful conduct were policy decisions "made by consciously balancing risks and benefits," as required for immunity to apply. [Filing No. 47 at 12-13.] In reply, the City argues that there is no evidence that the offending conduct "was committed in retaliation for any protected expression." [Filing No. 54 at 2-3.]

---

[7] The Court notes, however, that because only equitable relief is available as to this claim, Mr. Stillman has no statutory or constitutional right to a jury trial on it. *See Kramer*, 355 F.3d at 967-68 ("There is no right to a jury where the only remedies sought (or available) are equitable."). He may, however, seek an advisory jury by consent.

Indiana recognizes a cause of action against employers for negligent supervision or retention. *Hansen v. Board of Trustees of Hamilton Southeastern School Corp.,* 551 F.3d 599, 609 (7th Cir. 2008). "Indiana has adopted the Restatement (Second) of Torts § 317 as the standard with regard to this tort, under which a court must determine if the employer exercised reasonable care in hiring, supervising, or retaining an employee." *Hansen,* 551 F.3d at 609. The ITCA, however, immunizes from liability government entities and their officers acting within the scope of their employment when they act in "[t]he performance of a discretionary function." Ind. Code § 34-13-3-3(7). Government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Kellogg v. City of Gary,* 562 N.E.2d 685, 703 (Ind. 1990). "A public official may…be held liable if he violated constitutional or statutory rights that were clearly established at the time he acted such that a reasonably competent official should have then known the rules of law governing his conduct." *Id.*

The Court addresses the City's argument succinctly, because it overlaps with the argument regarding Mr. Stillman's ADA claim. The City argues that Mr. Stillman has not provided evidence of the violation of a statutory right, because he has failed to provide evidence of any violation of the ADA. As the Court described above, genuine disputes of material fact exist regarding the connection between Mr. Stillman's protected activities (assuming as it must that some exist) and the harassment he alleges. For the same reasons articulated in the context of the ADA claim, this claim must also be permitted to proceed.[8]

---

[8] The Court also notes that Mr. Stillman has a statutory right under Indiana state law to be free from battery. Contrary to the City's contention, Mr. Stillman need not show that the battery

For these reasons, the City's Motion as to Mr. Stillman's negligent supervision claim is **DENIED**.

## IV.
### CONCLUSION

For the reasons described above, the Court **GRANTS IN PART** and **DENIES IN PART** the City's Motion for Summary Judgment [32]. The Court **GRANTS** the Motion as to Mr. Stillman's slander claim (Count II). Other than noting that compensatory and punitive damages are not available to Mr. Stillman, the Court **DENIES** the Motion as to Mr. Stillman's claims for retaliation under the ADA (Count III), and negligent supervision (Count I). The Court requests that the Magistrate Judge confer with the parties at her earliest convenience regarding a possible resolution of this matter short of trial.

Date: 2/1/2019

*Jane Magnus-Stinson* (signature)
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF to all counsel of record.**

---

occurred in violation of the ADA, if he can establish that the City's action or inaction resulted in a violation of Indiana's criminal prohibition of battery.